**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: December 7, 2021
Date Decided: January 25, 2022

Carl D. Neff, Esquire
FisherBroyles, LLP
Brandywine Plaza West
1521 Concord Pike, Suite 301
Wilmington, Delaware 19803

Raymond J. DiCamillo, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801

> RE: ***Spencer L. Murfey, III, et al. v. WHC Ventures, LLC, et al.,***
> Civil Action No. 2020-0704-MTZ

Dear Counsel:

Pending before me are cross-motions for summary judgment on defendants' counterclaim Count I and plaintiffs' Count II. After my bench ruling on July 7, 2021,[1] the only issue remaining to be decided in connection with those motions is whether Section 4.3.1(b) of the partnership agreements at issue allows the general partner to shift attorneys' fees from litigation against a limited partner to that limited partner. I asked for supplemental briefing, and received it in December 2021.[2] I write to resolve that issue today.

---

[1] Docket Item ("D.I.") 102.

[2] D.I. 113; D.I. 118; D.I. 119.

As an initial matter, the defendants have withdrawn their counterclaim Count I and have agreed not to seek to shift fees for this matter under Section 4.3.1.[3] The defendants urge that Section 4.3.1's interpretation is therefore only relevant to future and hypothetical disputes, and so the dispute over its meaning is unripe. But the defendants overlook plaintiffs' Count III, which asserts the defendants breached the partnership agreements by shifting fees against the limited partner for previous litigation, because neither Section 4.3.1 nor any other section in the partnership agreements permit that fee-shifting.[4] That dispute is live; it is not hypothetical; and no additional facts will develop to advance the dispute for better presentation to the Court. Under a practical and common-sense consideration, I conclude that the dispute over the meaning of Section 4.3.1 is ripe for judicial determination,[5] and that the declaratory judgment sought in plaintiffs' Count II fairly advances the justiciability of the breach claim in Count III.[6]

---

[3] D.I. 111; D.I. 118 at 2 (referencing "WHC Defendants' agreement not to allocate fees in connection with this litigation"); *id.* at 3 ("Additionally, after the Ruling, the WHC Defendants agreed not to allocate fees under Section 4.3.1 in connection with this litigation and to dismiss Counterclaim I, which dismissal occurred on October 14, 2021.").

[4] D.I. 73 ¶¶ 94–99.

[5] *See Schick Inc. v. Amalgamated Clothing & Textile Workers Union*, 533 A.2d 1235, 1238–39 (Del. Ch. 1987).

[6] *See Rollins Int'l, Inc. v. Int'l Hydronics Corp.*, 303 A.2d 660, 662 (Del. 1973) (noting a purpose of declaratory judgment is to advance the stage of justiciability); *see also id.* at

And so I turn to the meaning of Section 4.3.1. It reads:

4.3.1 Certain Costs and Expenses.

(a) Reserves. The General Partner may cause some or all of the amount of any reserve described in Section 3.2 and any increase or decrease in any such reserve, to be specially accrued and charged against the Partnership's Net Asset Value, the proceeds of a Limited Partner's mandatory withdrawal, or a particular Partner to whom the General Partner determines that expense, liability or contingency is attributable and/or some combination of those, with whatever adjustments the General Partner determines are equitable and consistent with the intent expressed below. The Partners intend in this Section 4.3.1 and other provisions in this Agreement related to reserves, to authorize the General Partner to take steps to cause, to the extent the General Partner considers equitable and practicable, particular contingent costs to be borne by Limited Partners to whom those costs arc attributable.

(b) Other Special Costs. The Partnership may cause any expenditures, payments or amounts that the General Partner determines are, were or should be made or withheld on behalf of, for the benefit of, or because of circumstances applicable to, fewer than all Partners to be charged to those Partners.[7]

"A fee-shifting provision must be a clear and unequivocal agreement triggered by a dispute over a party's failure to fulfill obligations under the contract."[8] It must

---

662–63 (accepting as ripe a defendant's declaratory judgment counterclaim filed after the plaintiff dismissed its claim on those same rights).

[7] D.I. 73 at Ex. L § 4.3.1 [hereinafter "LPA"] (emphasis omitted). The parties agree that this LPA is representative of all the partnership agreements in this case.

[8] *Facchina Constr. Litigs.,* 2021 WL 1118115, at *2 (Del. Super. Mar. 24, 2021) (citing *SARN Energy LLC v. Tatra Defence Vehicle A.S.*, 2019 WL 6525256, at *1 (Del. Super. Oct. 31, 2019)); *Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*, 2020 WL 7861336, at *5 (Del. Ch. Dec. 31, 2020) ("[I]ndemnity agreements are presumed not to require reimbursement for attorneys' fees incurred as a result of substantive litigation

include "specific language," such as "any reference to 'prevailing parties,' a hallmark term of fee-shifting provisions."[9] This requirement is observed with particular obedience in interpreting cost-shifting provisions between litigants, so that first-party cost-shifting does not swallow the American Rule.[10] Section 4.3.1 shifts an "expense, liability or contingency," or "special costs," namely "expenditures, payments or amounts," at the general partner's discretion.[11] It does not clearly or unambiguously shift fees in litigation.

Reading the agreement as a whole does not support characterizing Section 4.3.1 as a fee-shifting provision. Section 4.3.1 appears in Article IV,

---

between the parties to the agreement absent a clear and unequivocal articulation of that intent." (internal quotation marks omitted) (quoting *Senior Hous. Cap., LLC v. SHP Senior Hous. Fund, LLC*, 2013 WL 1955012, at *44 (Del. Ch. May 13, 2013))), *aff'd sub nom. Herzog v. Great Hill Equity P'rs IV, LP*, 2021 WL 5993508 (Del. Dec. 20, 2021); *Int'l Rail P'rs LLC v. Am. Rail P'rs, LLC*, 2020 WL 6882105, at *5–6 (Del. Ch. Nov. 24, 2020) (collecting Superior Court cases regarding fee shifting provisions), *cert. denied*, (Del. Ch. 2020), and *appeal refused*, 245 A.3d 517 (Del. 2021).

[9] *Senior Hous. Cap.*, 2013 WL 1955012, at *45 ("Here, there is no specific language in the indemnification provision of the Management Agreements that covers fee-shifting. Therefore, I will not interpret the provision in an expansive way that would be inconsistent with the American Rule."); *Nasdi Hldgs., LLC v. N. Am. Leasing, Inc.*, 2020 WL 1865747, at *6 (Del. Ch. Apr. 13, 2020) (ORDER) (citations omitted).

[10] *Senior Hous. Cap.*, 2013 WL 1955012, at *44; *accord Deere & Co. v. Exelon Generation Acqs., LLC*, 2016 WL 6879525, at *1 (Del. Super. Nov. 22, 2016) *(*finding indemnification provisions must specifically address fee-shifting to achieve fee-shifting, to prevent "swallow[ing] the American Rule").

[11] LPA § 4.3.1.

"Accounts and Allocations."[12]  It follows Section 4.2's allocations of profits and losses.[13]  It precedes Section 4.3.2, which refers to Section 4.3.1 in the context of "assets that give rise to special allocations pursuant to . . . Section 4.3.1."[14]  Section 4.4.2 references adjusting each partner's capital account for "any costs, expenses or charges" allocated pursuant to Section 4.3.1.[15]  The rest of Article IV addresses the allocation of gains, income, losses, deductions, and tax liability.  This context in Article IV supports the interpretation that Section 4.3.1's "special costs" represent operating expenses, not intra-partnership litigation.[16]

The partnership agreement also contains a separate fee-shifting provision. Section 14.14 shifts fees to the prevailing party in an arbitration, an option available if either litigant in an inter-partnership dispute elects it.[17]  Section 14.14 on its face does not shift fees in litigation.  The presence of Section 14.14 indicates the parties were aware of how to shift fees, and intended to shift fees only in arbitration.  Section

---

[12] *Id.* at Art. IV.

[13] *Id.* § 4.2 ("Allocations of Profit and Loss").

[14] *Id.* § 4.3.2.

[15] *Id.* § 4.4.2.

[16] *Id.* § 4.3.1; *see also id.* § 2.1 (addressing "special charges" that the general partner can assess to cover costs associated with accepting contributed assets).

[17] *Id.* § 14.14 ("The arbitrator will, in the Award, allocate all of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail.").

14.14 supports an interpretation that Section 4.3.1 does not encompass fee-shifting in intra-partnership litigation.

Section 4.3.1 does not create a clear and unequivocal agreement to shift fees to a limited partner when the general partner prevails in litigation against that limited partner. Summary judgment is entered in favor of plaintiffs on defendants' counterclaim Count I and plaintiffs' Count II. To the extent an order is required to implement this ruling, IT IS SO ORDERED. The parties shall confer on what remains to be done in this matter and submit a schedule for accomplishing those tasks.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor


MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*